# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.:   1:16-825-JMC |
| v. | ) | |
| | ) | |
| SAVANNAH RIVER NUCLEAR | ) | |
| SOLUTIONS, LLC and FLUOR FEDERAL | ) | **JURY TRIAL REQUESTED** |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES' COMPLAINT

The United States of America, for its complaint and by its attorneys, alleges as follows:

## INTRODUCTION

1.     This is a civil action by the United States of America to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733, and for damages for the common law and equitable claims of breach of contract, unjust enrichment and payment by mistake arising from Defendants' use and submittal of false and fraudulent claims and statements to the United States by knowingly including unallowable costs in inflated claims to the United States Department of Energy (DOE), while falsely representing that such costs had not been claimed under the contract.

2.     Since August 2008, Savannah River Nuclear Solutions, LLC (SRNS) and Fluor Federal Services, Inc. (Fluor Federal) knowingly participated in a fraudulent scheme to claim and receive payment from the United States for costs they knew to be unallowable by submitting

and receiving payment for contractually unallowable home office and bid and proposal costs while falsely certifying they had submitted no unallowable costs for payment.

3. Fluor Federal and SRNS knowingly submitted inflated claims to DOE that falsely or fraudulently over-charged the government.

## JURISDICTION AND VENUE

4. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-3733, and common law. This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345, and 1355.

5. This Court has personal jurisdiction over the Defendants because the Defendants conducted business in the District of South Carolina, because the Defendant SRNS had its principal place of business in the District of South Carolina, because SRNS and Fluor Federal made and used false statements from within and to a federal agency located in the District of South Carolina, and because many of the prohibited acts committed by the Defendants occurred within the District of South Carolina.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1395, and under 31 U.S.C. § 3732(a). Defendants can be found, reside, and transact business within the District of South Carolina. Additionally, many of the acts committed by the Defendants proscribed by the False Claims Act occurred within the district.

## STATUTE OF LIMITATIONS

7. SRNS executed a tolling agreement with the United States that tolled the running of the statute of limitations from August 7, 2014 until February 29, 2016.

8.      All of the claims in this matter are timely under 31 U.S.C. § 3731(b)(1) and (b)(2).

## THE PARTIES

9.      The Plaintiff in this action is the United States of America.

10.     The DOE is a cabinet-level executive agency of the United States headquartered in Washington, D.C.  The DOE's mission is to ensure the United States' security and prosperity by addressing its energy, environmental, and nuclear challenges through science and technology.  The DOE is also responsible for the management, environmental restoration, and remediation of the United States' legacy nuclear weapons production facilities, and the legacy waste generated from those facilities, in a manner protective of public and environmental health.

11.     During the relevant time period, SRNS was a for profit limited liability company established between Fluor Federal, Newport News Nuclear, Inc. (NNN) and Honeywell International (Honeywell) to perform management and operating functions of the DOE's Savannah River Site (SRS) in Aiken, SC.  Fluor Federal owns 48% of SRNS with NNN and Honeywell owning the remaining interest and no one owner holding a majority.  SRNS holds Management and Operating Contract No. DE-AC09-08SR22470 with the Department of Energy (the M&O contract).

12.     During the relevant time period, Fluor Federal was a lower tier organization of Fluor Government Group (Fluor Government).  Fluor Government was a lower tier organization of the Fluor Corporation (Fluor Corp.).

3

13.    During the relevant time period, both Fluor Government and Fluor Corp. allocated unallowable costs to Fluor Federal which Fluor Federal then claimed as incurred costs for inclusion in SRNS billings to the DOE.

## LEGAL BACKGROUND

**The False Claims Act**

14.    The False Claims Act establishes liability for the following:

a.    any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval, 31 U.S.C. § 3729(a)(1) (through May 19, 2009), or any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval, 31 U.S.C. § 3729(a)(1)(A) (after May 19, 2009); and

b.    any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, 31 U.S.C. § 3729(a)(1)(B).

15.    The term "knowingly" under the False Claims Act means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).  No proof of specific intent to defraud is required to show that a person acted knowingly under the False Claims Act.  31 U.S.C. § 3729(b) (through May 19, 2009); 31 U.S.C. § 3729(b)(1)(B) (after May 19, 2009).

16.    The False Claims Act provides for recovery of three times the damages sustained by the United States ("treble damages") plus a civil penalty for each false claim.

4

17.    The civil penalty is to be not less than $5,500 and not more than $11,000.  31 U.S.C. § 3729(a), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, and the Debt Collection Improvement Act of 1996, see 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103 (1999).

**The Federal Acquisition Regulations**

18.    Reimbursement of SRNS's costs under the M&O contract is governed by Federal Acquisition Regulation (FAR) and the cost principles found in FAR Subpart 31.2.  Under these principles, SRNS could claim reimbursement only for those costs incurred in furtherance of the scope of work under the contract, provided that the costs were reasonable, allocable, and allowable.  Additionally, SRNS was responsible for maintaining supporting documentation adequate to determine the reasonableness, allocability, and allowability of the costs, and compliance with the cost principles.

## FACTUAL ALLEGATIONS

**The Savannah River Site Management and Operations Contract**

19.    DOE's Savannah River Site is a 310 square-mile site located in Aiken, Barnwell and Allendale counties, South Carolina, in the District of South Carolina.  The Savannah River Site was constructed in the early 1950s to produce weapons-grade plutonium and tritium for use in the United States' nuclear weapons arsenal.  The Savannah River Site is managed by the DOE-Savannah River Operations Office, located in Aiken, South Carolina, whose mission is to serve the national interest by ensuring the safe, open, and cost effective clean-up and maintenance of the Site and its nuclear materials.  The DOE enters into contracts for the management of its facilities.  These contracts are known as M&O contracts and are used in DOE

facilities across the country.    The management and operation of the Savannah River Site is contracted to SRNS.

20.    Savannah River Site houses a number of nuclear facilities for the production of nuclear materials, the stabilization of nuclear materials, and the cleanup of radioactive waste created as a result of the production of nuclear weapons during the Cold War.  Many of these facilities are operated by SRNS.

21.    DOE requires by both regulation and contract that M&O contracts be performed by a single purpose legal entity.  On June 16, 2008, DOE entered into the M&O contract with SRNS, a single purpose legal entity, to operate the Savannah River Site.  On August 1, 2008 SRNS commenced performance under the M&O contract.    Pursuant to the M&O contract, SRNS was required to oversee, and manage nuclear clean-up activities as well as facilities that produce radioactive isotopes for defense, space exploration, and medical use.  The principal place of performance for the M&O contract is the Savannah River Site.    SRNS employed numerous employees directly and additional employees through "the corporate reachback" or "loaned employee" program whereby employees were loaned from SRNS' owners to conduct work directly for SRNS.

22.    The M&O contract is a cost-reimbursement contract, meaning that SRNS was reimbursed for its actual costs incurred in furtherance of SRNS's designated scope of work under the contract.

23.    The M&O contract provides that DOE will pay all allowable costs and earned fee, i.e. agreed upon profits, through a Special Financial Institution Account commonly referred to as a "letter of credit" (the "LOC").    Specifically, SRNS draws daily from the LOC to cover its

incurred costs, and such draws, in turn, result in payments from the United States Treasury to maintain a zero balance in the LOC.   In other words, SRNS collects and consolidates invoices associated with its contract work scope and draws from the LOC to pay such invoices.  Similarly, SRNS pays Fluor Federal invoices through draws from the LOC.

24.     During the course of the M&O contract from August 1, 2008 to December 31, 2015 SRNS claimed and received more than $8 billion from the DOE under the M&O contract in reimbursement for its incurred costs.  In addition to SRNS's recovery of its indirect and direct costs, SRNS claimed and received an additional $301,343,880.95 in performance incentive fee/profit from August 1, 2008 to December 31, 2015.

25.     Both DOE regulations and the M&O Contract include provisions that make home office expenses unallowable costs.  Specifically, clause H-20 Home Office Expenses, of the M&O contract states:

Home office expenses, whether direct or indirect, relating to activities of the Contractor are unallowable, except as otherwise specifically provided in the Contract or specifically agreed to in writing by the [Contracting Officer (CO)] consistent with DEAR 970.3102-3-70. "Home Office Expenses."

26.     The general unallowability of home office expenses is further detailed in Department of Energy Acquisition Regulation (DEAR) 970.3102-3-70 which is specifically included in the M&O contract and states in part:

(a) For on-site work, DOE's fee for management and operating contracts, determined under the policy of and calculated per the procedures in 48 CFR 970.1504-1-3, generally provides adequate compensation for home or corporate office general and

administrative expenses incurred in the general management of the contractor's business
as a whole.

(1)    DOE recognizes that some Home Office Expenses are incurred for the benefit of a
management and operating contract.  DOE has elected to recognize that benefit through fee due
to the difficulty of determining the dollar value applicable to any management and operating
contract.

27.    Both Fluor Federal and SRNS managerial personnel participated extensively in
the negotiation and execution of the M&O contract with DOE and knew that home office
expense were expressly unallowable under the M&O contract.

28.    Neither Fluor Federal nor SRNS has ever sought or received permission from the
CO to make any home office expenses allowable.

29.    The M&O contract also includes specific provisions that make bid and proposal
costs unallowable costs.  Specifically, clause I.51 (j) states:

Determining allowable costs.  The contracting officer shall determine allowable
costs in accordance with the Federal Acquisition Regulation subpart 31.2 and the
Department of Energy Acquisition Regulation subpart 48 CFR 970.31 in effect on the
date of this contract and other provisions of this contract.

30.    The Code of Federal Regulations (CFR) subpart referenced in the M&O contract
contains a provision titled "Independent research and development and bid and proposal costs,"
48 CFR 970.3102-05-18, and in relevant part states:

(c) Independent Research and Development and Bid and Proposal costs are unallowable.

31.    Both Fluor Federal and SRNS managerial personnel participated extensively in the negotiation and execution of the M&O contract with DOE and knew that bid and proposal costs were expressly unallowable under the M&O contract.

32.    Neither Fluor Federal nor SRNS has ever sought or received permission from the CO to make any bid and proposal costs allowable.

**The Corporate Reachback Program**

33.    SRNS was authorized to enter into loaned employee agreements with its owners and their affiliates.  The purpose of the loaned employee agreements is to allow for "reachback" to the SRNS member companies' employee pool for critical skills needed in the performance of the M&O  contract at the Savannah River Site.  The practice of using loaned employees has come to be known as "corporate reachback."

34.    Corporate reachback consists of an intra-company human resources cost transfer and is not a subcontract with an outside source.  As an acceptable and approved human resources technique, personnel are loaned pursuant to a cost transfer agreement and not a procurement (sub) contract.

35.    Corporate reachback personnel perform their activities at the Savannah River Site and their activities are directly related to M&O contract and on behalf of SRNS.

36.    SRNS and Fluor Federal entered into a cost transfer agreement on December 22, 2008, that explicitly acknowledged and restated the M&O contract's prohibition on claiming of home office expenses.  The cost transfer agreement explicitly governed the claiming of costs by Fluor Federal to SRNS to be paid by the DOE under the M&O contract.  The cost transfer agreement stated "For the term of this Agreement and any extensions thereof, allocations of

home office expenses to FFS [Fluor Federal] Loaned Employee costs are unallowable in accordance with the provisions of the SRNS Contract unless a directly benefiting relationship to the Government is demonstrated and approved in writing by both the designated SRNS Contracting Officer and the designated DOE Contracting Officer(s)."

37.     The cost transfer agreement that was signed by Charles Munns, President and CEO, SRNS, and Kenneth Smith a Senior Vice President of Fluor Federal further evidences that SRNS and Fluor Federal, as well as both Mr. Munns on behalf of SRNS and Mr. Smith on behalf of Fluor Federal were all aware of and understood the contract's prohibition on the charging of home office expenses.

38.     The cost transfer agreement unequivocally evidences that both Fluor Federal and SRNS understood and agreed that to the extent Fluor Corp or Fluor Government allocated home office expenses to Fluor Federal, those expenses could not be charged to the DOE without specified written approvals from DOE that were neither sought nor obtained.

39.     On May 24, 2010, Garry Flowers, President and CEO of SRNS and a reachback employee of Fluor Federal, wrote a letter on the SRNS corporate reachback program to Jack Craig, Manager of the DOE Savannah River Operations Office, and explicitly stated and assured DOE that SRNS and Fluor Federal were processing corporate reachback employees in accordance with the cost transfer agreement.

40.     Mr. Flowers, and Fluor Federal and SRNS, knew this statement was false.  In fact and truth, Fluor Federal and SRNS were knowingly charging both home office expenses and bid and proposal costs to the DOE in direct violation of the cost transfer agreement and in direct violation of the M&O contract.

10

41.     On April 20, 2011, internal auditors at SRNS sent an internal audit to SRNS management that involved the corporate reachback program.  The SRNS management that received the audit in April 2011, such as Greg Ahlstrom, SRNS Deputy Chief Financial Officer, were also corporate reachback employees of Fluor Federal performing activities for SRNS under the M&O contract.  The audit explicitly considered the reimbursement of Fluor Federal employees in connection with the M&O contract.

42.     The audit specifically noted the cost transfer agreement and noted that the cost transfer agreement established the procedure to be used by Fluor Federal for invoicing costs incurred relating to corporate reachback employees, as well as the procedure to be used by SRNS for processing and paying those invoices.  As alleged above, the cost transfer agreement referenced in the audit explicitly makes unallowable the inclusion of home office expenses in the invoices from Fluor Federal to SRNS.

43.     No one at Fluor Federal or SRNS challenged the auditors' reference to the cost transfer agreement or accuracy of the cost transfer agreement's prohibition on claiming home office expenses for loaned employees.

44.     On May 19, 2011, Ms. Margaret Davis, Chief Financial Officer, SRNS, requested that SRNS team member Honeywell provide certification that Honeywell was not charging SRNS home office expenses related to loaned employees so that SRNS could certify to the DOE contracting officer that home office expenses were not being billed to DOE.  Ms. Davis was herself a corporate reachback employee of Fluor Federal performing activities for SRNS under the M&O contract.

45.    On that same day Ms. Gloria Zarrella, Chief Financial Officer, Honeywell, confirmed that Honeywell was not passing on any home office expenses to SRNS related to loaned employees.  The communication by Ms. Davis of SRNS further evidences that SRNS and Fluor Federal, as well as Ms. Davis, were aware of and understood the M&O contract's prohibition on the charging of home office expenses.

46.    On May 20, 2011, SRNS Deputy Chief Financial Officer, Mr. Greg Ahlstrom, provided confirmation to the DOE contracting officer that SRNS owners NNN and Honeywell were not charging SRNS home office expenses related to loaned employees.

47.    On May 20, 2011, Mr. Ahlstrom also again falsely informed DOE that no home office expenses of Fluor Corp and Fluor Government were being billed to DOE.  Mr. Ahlstrom noted that Fluor Corp and Fluor Government home office expenses were allocated to Fluor Federal, but insisted that Fluor Federal did not believe Fluor Federal loaned employee expenses met the definition of home office expenses prohibited by the M&O contract.  No reference was made to bid and proposal costs.

48.    Mr. Ahlstrom, who was an SRNS loaned employee from Fluor Federal, did not inform DOE that this interpretation was in direct contradiction to the cost transfer agreement between SRNS and Fluor Federal, which he had received and reviewed, and was in direct contradiction to the findings of, and management response to, the SRNS internal audit.

49.    Following the information from Mr. Ahlstrom, the DOE Contracting Officer, Scott Langston, responded that DOE would audit SRNS's corporate reachback costs and that DOE would declare them to be unallowable and demand them to be repaid if any were found to violate a law, regulation or the M&O contract.

50.    On January 31, 2012, after these communications with DOE and the earlier internal audit, SRNS secretly modified its cost transfer agreement with Fluor Federal to delete the sentence "For the term of this Agreement and any extensions thereof, allocations of home office expenses to FFS loaned employee costs are unallowable in accordance with the provisions of the SRNS Contract…."  They also inserted the sentence "For the term of this Agreement and extensions thereof, allocations of home office expenses to *the SRNS segment* costs are unallowable in accordance with the provisions of the SRNS Contract…." (emphasis added).  The modified cost transfer agreement was signed by Dwayne A. Wilson, President and CEO of SRNS (who was also a Fluor Federal reachback employee) and Kenneth Smith, Senior Vice President of Fluor Federal.

51.    Fluor Federal and SRNS, including Mr. Wilson and Mr. Smith, knew that this change was directly at odds with the original meaning and intent of the cost transfer agreement, and directly at odds with the explicit contractual and regulatory provisions pertaining to home office expenses being billed to DOE.

52.    On March 27, 2012, the DOE Contracting Officer referred the corporate reachback reimbursement matter as a potential fraud to the Office of the Inspector General for the Department of Energy.

53.    On May 22, 2012, John Temple, Director of Contracts for SRNS, forwarded an internal audit titled "Corporate Reach Back Floor Check Review," dated May 21, 2012, to the DOE Contracting Officer.  The scope of the internal audit was to "review encompassed expenses and burdens applied to the corporate reachback employee working at SRNS on 5/1/2012."  This

was the first time the Department of Energy had actual evidence that home office expenses were being included in incurred costs submissions and billings to the DOE.

54.     On January 29, 2013, the DOE Contracting Officer issued a finding that all home office expenses, past and future, billed to DOE through the corporate reachback program, in amounts to be determined, were unallowable.

55.     When even that finding did not stop Defendants, on April 8, 2015, Angela Morton, DOE Contracting Officer, issued a cease and desist letter to SNRS, requiring SRNS to immediately cease and desist billing home office expenses to DOE under the M&O contract.

**False and Fraudulent Claims**

56.     Between October 2008 and December 31, 2015, Fluor Federal submitted invoices to SRNS and caused those invoices to be claimed to the DOE under the M&O contract for explicitly unallowable bid and proposal costs.

57.     In each of those invoices, Fluor Federal knowingly and falsely certified that the costs included in the invoice were in accordance with the requirements of the M&O contract and therefore did not contain explicitly unallowable home office and bid and proposal costs.

58.     Fluor Federal knew that these certifications were false and also knowingly caused the submission of false and fraudulent claims by SRNS to DOE containing these home office expenses and bid and proposal costs.

59.     Fluor Federal and SRNS have knowingly and fraudulently claimed more than $5,203,000 in contractually unallowable home office and bid and proposal costs between 2008 and 2015.

**SRNS's False Certifications**

60.    Under the M&O contract, SRNS was required to review its claimed costs annually, including its reachback costs, and certify that all costs were allowable, allocable, reasonable, and had properly been incurred in furtherance of SRNS's contract scope of work.

61.    On October 22, 2008, Margaret Davis, Chief Financial Officer for SRNS, and a management employee of Fluor Federal, signed the "Statement of Costs Incurred and Claimed under the M&O contract for the period beginning August 1, 2008, and ending September 30, 2008" (the "2008 SCIC"), which contained the following certification: "I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are allowable and reasonable in accordance with the terms of the subject contract and applicable laws and regulations, subject to audit."    In the 2008 SCIC, SRNS represented total costs incurred and claimed of $337,751,965.34.    SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs.    Subsequent review by DOE revealed that among such claimed costs were home office expenses of $1,193,098, and bid and proposal costs of $88,992, totaling $1,282,090 in unallowable costs.

62.    On October 22, 2009, Margaret Davis, Manager, SRNS, and a management employee of Fluor Federal, signed the "Statement of Costs Incurred and Claimed under the M&O contract for the period beginning October 1, 2008, and ending September 30, 2009" (the "2009 SCIC"), which contained the following certification: "I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are allowable and reasonable in accordance with the terms of the subject contract and applicable laws and regulations, subject to

audit."    In the 2009 SCIC, SRNS represented total costs incurred and claimed of $1,088,741,592.20.  SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs.  Subsequent review by DOE revealed that among such claimed costs were home office expenses of $869,444, and bid and proposal costs of $73,170, totaling $942,614 in unallowable costs.

63.    On October 20, 2010, Margaret Davis, Manager, SRNS, and a management employee of Fluor Federal, signed the "Statement of Costs Incurred and Claimed under the M&O contract for the period beginning October 1, 2009, and ending September 30, 2010 (the "2010 SCIC"), which contained the following certification: "I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are allowable and reasonable in accordance with the terms of the subject contract and applicable laws and regulations, subject to audit."    In the 2010 SCIC, SRNS represented total costs incurred and claimed of $1,222,664,829.56.  SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs.  Subsequent review by DOE revealed that among such claimed costs were home office expenses of $794,830, and bid and proposal costs of $111,880, totaling $906,710 in unallowable costs.

64.    On October 24, 2011, a Manager of SRNS signed the "Statement of Costs In Incurred and Claimed under the M&O contract for the period beginning October 1, 2010, and ending September 30, 2011"  (the "2011 SCIC"), which contained the following certification: "I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are

allowable and reasonable in accordance with the terms of the subject contract and applicable laws and regulations, subject to audit." In the 2011 SCIC, SRNS represented total costs incurred and claimed of $1,338,373,024.64. SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs. Subsequent review by DOE revealed that among such claimed costs were home office expenses of $362,815, which are unallowable.

65.     On October 22, 2012, Margaret Davis, Manager, SRNS, and a management employee of Fluor Federal, signed the "Statement of Costs Incurred and Claimed under the M&O contract for the period beginning October 1, 2011, and ending September 30, 2012" (the "2012 SCIC"), which contained the following certification: "I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are allowable in accordance with the terms of the subject contract and applicable laws and regulations." In the 2012 SCIC, SRNS represented total costs incurred and claimed of $1,080,017,330.54. SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs. Subsequent review by DOE revealed that among such claimed costs were home office expenses of $633,506, and bid and proposal costs of $32,700, totaling $666,206 in unallowable costs.

66.     On October 22, 2013, James Barry, Manager, SRNS,  who was also a management employee of Fluor Federal, signed the "Statement of Costs Incurred and Claimed under the M&O contract for the period beginning October 1, 2012, and ending September 30,

2013" (the "2013 SCIC"), which contained the following certification: "I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are allowable in accordance with the terms of the subject contract and applicable laws and regulations. (See attached footnotes for additional clarification)."   The 2013 SCIC included two footnotes one of which stated:  "On August 29, 2013, SRNS was notified by the Department of Justice of potential civil action with regard to the application of overheads on contract charges for Fluor employees.  The potential allegations involve accounting mischarges and false certification of claimed costs regarding home office expenses, bid and proposal expenses, and pursuit expenses.  SRNS strongly disputes all allegations.  These overheads are included in the 2013 SCIC until such time the issue is resolved."  SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs.  In the 2013 SCIC, SRNS represented total costs incurred and claimed of $895,216,424.10.   Subsequent review by DOE revealed that among such claimed costs were home office expenses of $254,183, totaling $254,183 in unallowable costs.

67.    On March 27, 2015, James Barry, Manager, SRNS, who was also a management employee of Fluor Federal, signed the "Statement of Costs Incurred and Claimed under the M&O contract for the period beginning October 1, 2013, and ending September 30, 2014" (the "2014 SCIC"), which contained the following certification: "Subject to the False Claims Act (31 U.S.C. § 3279 et seq) I certify that, to the best of my knowledge and belief, the Costs Incurred and Claimed are allowable in accordance with the terms of the subject contract and applicable laws and regulations."   The 2014 SCIC included two footnotes one of which stated:  "On August

18

29, 2013, SRNS was notified by the Department of Justice of potential civil action with regard to the application of overheads on contract charges for Fluor employees.  The potential allegations involve accounting mischarges and false certification of claimed costs regarding home office expenses, bid and proposal expenses, and pursuit expenses.   SRNS strongly disputes all allegations.   These overheads are included in the 2014 SCIC until such time the issue is resolved."  SRNS and Fluor Federal knew this certification was false and knew that SRNS and Fluor Federal submitted and caused to be submitted false and fraudulent claims that contained unallowable home office and bid and proposal costs.  In the 2014 SCIC, SRNS represented total costs incurred and claimed of $926,590,269.88.   Subsequent review by DOE revealed that among such claimed costs were home office expenses of $452,895, and bid and proposal costs of $28,504 totaling $481,399 in unallowable costs.

**False Claims for Payment**

68.     Between October 8, 2008, and December 31, 2015, Fluor Federal submitted 573 claims to SRNS in connection with its reachback employees that it knew contained unallowable home office and bid and proposal costs in direct violation of DOE Regulations and the M&O contract.  Fluor Federal reachback employees and SRNS knowingly colluded and submitted or caused to be submitted claims to the DOE under the M&O contract that included the fraudulent home office and bid and proposal costs.

69.     Attached as Exhibit 1 hereto is a complete list of the 573 claims made by Fluor Federal to SRNS that contained knowingly unallowable home office and bid and proposal costs that were fraudulently submitted or caused to be submitted to the DOE under the M&O contract.

19

70.    SRNS and Fluor Federal presented each of these 573 claims to an officer or employee of the United States Government under the mechanism of the LOC and each is a false or fraudulent claim for payment or approval  under the False Claims Act.

71.    Fluor Federal and SRNS received payment from DOE for these improper, unallowable, inflated, and fraudulent claims.  Moreover, SRNS and Fluor Federal knowingly and fraudulently certified that it had not included any unallowable costs in its LOC drawdowns to the DOE under the M&O contract.

72.    Because these claims knowingly included unallowable costs, and relied upon knowingly false certifications and statements to obtain payment for such submitted claims and to demonstrate compliance with the M&O contract, each of SRNS's LOC draws, including corporate reachback and bid and proposal costs, between October 8, 2008 and the present are false and fraudulent claims.

73.    Attached as Exhibit 2, is a list of the 290 payments to Fluor Federal from SRNS using funds from draws of the LOC by SRNS and Fluor Federal that included improper and fraudulent corporate reachback, and bid and proposal costs.

74.    SRNS certified on each year's Statement of Costs Incurred and Claimed (SCIC) that the "Costs Incurred and Claimed are allowable and reasonable in accordance with the terms of the subject contract..."  These certifications were false and were made in order to obtain payment for such false claims.

**CLAIMS FOR RELIEF**

**Count I**
False Claims Act: Submission of False Claims
31 U.S.C. § 3729(a)(1) (claims through May 19, 2009)

75.    The United States repeats and realleges the preceding paragraphs.

76.    Fluor Federal and SRNS knowingly presented, or caused to be presented, to an officer or employee of the United States false or fraudulent claims for payment or approval for activities under the M&O contract. The claims were false or fraudulent as a result of Defendants knowingly concealing home office and bid and proposal costs that resulted in false and inflated Contract prices.

77.    By virtue of the false or fraudulent claims, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages under the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

**Count II**
False Claims Act: Submission of False Claims
U.S.C. § 3729(a)(1)(A) (claims from and after May 20, 2009)

78.    The United States repeats and realleges the preceding paragraphs.

79.    Fluor Federal and SRNS knowingly presented, or caused to be presented, false or fraudulent claims for activities under the M&O contract. The claims were false or fraudulent as a result of Defendants knowingly concealing home office and bid and proposal costs that resulted in false and inflated Contract prices.

80.    By virtue of the false or fraudulent claims, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages under

the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

### Count III
False Claims Act: Making or Using False Records or
Statements Material to a False or Fraudulent Claim
31 U.S.C. § 3729(a)(1)(B) (claims after June 6, 2008)

81.    The United States repeats and realleges the preceding paragraphs.

82.    Fluor Federal and SRNS knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims for payment under the M&O contract.

83.    In particular, Fluor Federal and SRNS certified that SRNS's submitted incurred costs to the DOE met the requirements of the M&O contract and did not contain expressly unallowable costs when each knew that was not true.  Fluor Federal and SRNS also falsely stated that the processing and submission of costs for reachback labor was in accordance with the cost transfer agreement between Fluor Federal and SRNS when each knew this was not true.  Fluor Federal and SRNS each also falsely claimed and asserted that they had understood the requirements of the M&O contract did not apply to Fluor Federal and then fraudulently amended the cost transfer agreement to conceal their true belief.  These false records and statements were material to SRNS's ability to claim costs under the M&O contract and ultimately to Defendants' false or fraudulent claims for payment under the M&O contract.

84.    By virtue of these false or fraudulent records and statements, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages under the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

**Count IV**
Breach of Contract
(Against SRNS)

85.    The United States repeats and realleges the preceding paragraphs.

86.    Pursuant to the M&O contract, SRNS was not allowed to submit and claim cost reimbursement for home office expenses or bid and proposal costs.

87.    In breach of its obligations, SRNS claimed millions of dollars of expressly unallowable home office expenses and bid and proposal costs.

88.    SRNS also failed to provide a truthful certification about its costs claimed and incurred.

89.    As a result of SRNS's actions described above, SRNS breached the M&O contract.

90.    As a result of SRNS's breach, the United States was damaged in an amount to be determined at trial.

**Count V**
Unjust Enrichment
(Against Fluor Federal)

91.    The United States repeats and realleges the preceding paragraphs.

92.    Through Fluor Federal's false representations and collusion through its employees performing activities on the M&O contract, Fluor Federal was unjustly enriched by its receipt of monies to which it was not entitled.  In equity and good conscience, Fluor Federal should not retain these payments.

93.    As a result of Fluor Federal's unjust enrichment, the United States was damaged in an amount to be determined at trial.

23

**COUNT VI**
Payment by Mistake

94.    The United States repeats and realleges the preceding paragraphs.

95.    By reason of the foregoing, SRNS and Fluor Federal caused the United States to make payments in the mistaken belief that payment was due.  In such a circumstance, payment was by mistake and not authorized.

96.    As a result of the mistaken payments, the United States was damaged in an amount to be determined at trial.

**Prayer for Relief**

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States against Fluor Federal and SRNS as follows:

I.    On the First Count under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with such further relief as may be just and proper.

II.    On the Second Count under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with such further relief as may be just and proper.

III.    On the Third Count under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

IV.    On the Fourth Count for breach of contract by SRNS, for the amount of damages by reason of the breach to be determined, together with interest, costs and expenses, and such further relief as may be just and proper.

24

V.      On the Fifth Count for Unjust Enrichment, for the amount by which Fluor Federal was unjustly enriched, plus interest, costs, and expenses, and such further relief as may be just and proper.

VI.     On the Sixth Count for Payment by Mistake, for the amount the United States paid by mistake, plus interest, costs, and expenses, and such further relief as may be just and proper.

**A Jury Trial is Requested.**

                                           Respectfully Submitted,

                                           BENJAMIN C. MIZER
                                           Principal Deputy Assistant Attorney General

                                           WILLIAM N. NETTLES
                                           United States Attorney

                                           DONALD WILLIAMSON
                                           KATHERINE BUSHMAN SMITH
                                         U.S. Department of Justice
                                         Civil Division
                                         P.O. Box 261
                                         Ben Franklin Station
                                         Washington, D.C. 20044
                                         (207) 771-3266

                                         */s/ Fran Trapp*
                                         FRAN TRAPP
                                         Assistant United States Attorney
                                         United States Attorney's Office for the
                                         District of South Carolina
                                         1441 Main Street, Suite 500
                                         Columbia, South Carolina 29201

Dated:  March 14, 2016