**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Civil Action No. 1:16-cv-00825-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Savannah River Nuclear Solutions, LLC | ) | |
| and Fluor Federal Services, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the court pursuant to the court's earlier determination that, pursuant to 41 U.S.C. § 7107(f), it will request an advisory opinion from the Civilian Board of Contract Appeals ("CBCA") on certain matters of contract interpretation that are under the court's consideration. (*See* ECF No. 42.) Having received briefing from the parties regarding the questions to be asked the CBCA in requesting an advisory opinion (*see* ECF Nos. 47, 48, 52, 53), the court concludes that it will ask the questions as set forth in the letter to the CBCA attached to this order for the reasons that follow.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Government filed a complaint against Defendants Savannah River Nuclear Solutions, LLC ("SRNS"), and Fluor Federal Services, Inc. ("FFS") (together, "Defendants") alleging, among other things, that Defendants made false claims for payment, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, by submitting for reimbursement certain home office expenses that the Government asserts were unallowable under the management and operations ("M&O") contract underlying this action and applicable regulations governing the allowability of expenses in cost-reimbursement contracts with the federal government. (*See* ECF

No. 1.) Defendants filed a motion to dismiss the Government's complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing with respect to claims involving home offices expenses, that the complaint, as relevant here, failed to sufficiently plead the falsity and scienter elements required for FCA claims. (*See* ECF No. 21.)

On December 6, 2016, the court entered an order granting in part and denying in part Defendants' motion to dismiss the Government's complaint. (ECF No. 42.)[1] Regarding the falsity requirement, the court explained that "it would be appropriate to determine whether the applicable provisions of the M&O contract and regulations makes the challenged costs unallowable" because "when the objective falsity of a claim for a government contractor's reimbursement of costs turns on a purely legal determination of whether those costs are allowable under the applicable provisions of the underlying contract and regulations, it is appropriate to make this determination at the motion-to-dismiss stage." (*Id.* at 31-32.) If the court determined that contract and regulations do not make the costs challenged in the complaint unallowable, then "there is no legal basis for concluding that the claim was false, a fundamental requirement of an FCA claim, and the complaint would state only a claim for which the court could not grant relief." (*Id.* at 33.)

Instead of making that determination, the court decided to grant Defendants' request (*see id.* at 33-38) to seek an advisory opinion on the matter from the CBCA, pursuant to § 7107(f), which, in relevant part, provides:

> (1) In general.—Whenever an action involving an issue described in paragraph (2) is pending in a district court of the United States, the district court may request an agency board to provide the court with an advisory opinion on the matters of contract interpretation under consideration.

---

[1] The order may be found at *United States v. Savannah River Nuclear Solutions, LLC*, No. 1:16-cv-00825-JMC, 2016 WL 7104823 (D.S.C. Dec. 6, 2016).

(2) Applicable issue.—An issue referred to in paragraph (1) is any issue that could be the proper subject of a final decision of a contracting officer appealable under this chapter.

41 U.S.C. § 7107(f)(1)-(2).

Regarding the scienter requirement, the court explained that "a contractor is not liable under the FCA, if the claims at issue were submitted with nothing more regarding scienter than that the contractor believed the claims were valid under its interpretation of the underlying contract or regulation." (ECF No. 42 at 44-45.) The court further explained that in assessing the contractor's belief, courts must be cognizant that the interpretation advanced by the contractor might be "the product of mere afterthought in an attempt to escape the scienter requirement" and that "a determination whether the contractor's interpretation was reasonable" would be relevant. (*Id.* at 45.) The court declined to determine whether Defendants' interpretation of the M&O contract and regulations precluded FCA liability at the motion to dismiss stage but determined that, because it was already requesting an advisory opinion from the CBCA as to the allowability of the challenged costs under the M&O contract and regulations, it would also be appropriate to request an advisory opinion as to the reasonableness of Defendants' interpretation of the M&O contract's and regulations' provisions regarding the allowability of the challenged costs. (*See id.*)

Having determined that it would request an advisory opinion from the CBCA on the aspects of the falsity and scienter elements described above, the court denied without prejudice Defendants' motion to dismiss the FCA claims regarding home office expenses and stated that it would enter a stay in the proceedings in this case pending receipt of the advisory opinion. (*See id.* at 61.) The court explained that, following receipt of the advisory opinion, Defendants would be free to renew or refile their motion to dismiss these claims. (*See id.*)

Following the court's order, the court granted the Government's motion for leave to file

briefs on the questions to be presented to the CBCA. (*See* ECF Nos. 44, 46.) Having received the briefs (*see* ECF Nos. 47, 48), the court also permitted the parties to file responses to each other's positions (*see* ECF No. 51), which the parties filed on January 10, 2017 (*see* ECF Nos. 52, 53).

The Government proposes two questions for which the court should seek an advisory opinion from the CBCA:

(1) Whether, as pled in the United States' Complaint, the home office expenses for the loaned employees at the Department of Energy's Savannah River Nuclear Site were allowable costs under the Management and Operating Contract. *See* Attachment 1 (Complaint); Attachment 2 (M&O Contract).

(2) Whether, as pled in the United States' Complaint, the home office expenses for the loaned employees at the Department of Energy's Savannah River Nuclear Site were allowable costs under applicable regulations. *See* Attachment 1 (Complaint); *see, e.g.*, DEAR 970.3102-3-70.

(ECF No. 47 at 2, 6.) The Government explains that these proposed questions are tailored to the matter of contract interpretation at issue in the motion to dismiss (whether the challenged costs are allowable under the M&O contract and applicable regulations) and minimize the potential for what the Government perceives as unnecessary fact-finding by the CBCA. (*See id.* at 3.) The Government contends that the court should not request an advisory opinion from the CBCA as to the reasonableness of Defendants' interpretation because such a request is not permitted by § 7107(f), because opining on the reasonableness of Defendants' interpretation would require impermissible fact-finding in the context of a motion to dismiss, and because the issue of reasonableness itself would only be relevant to the factual determination of Defendants' scienter in submitting the claim which should not be decided at the motion to dismiss stage. (*See id.* at 3-5.)

In response, Defendants first contend that the Government's proposed questions refer to

the challenged costs in a vague and inaccurate way and thus would prompt the CBCA to offer only a tautological opinion in response to the question. (*See* ECF No. 52 at 2-3.) In Defendants' view, the question should specify more clearly which costs are alleged to be unallowable. (*See id.*) Second, Defendants argue that the Government's proposed questions' reference to the costs "as pled in the Complaint" would unnecessarily limit the CBCA's consideration of allowability to the four corners of the complaint. (*See id.* at 3-5.) This limitation would hinder the CBCA's ability to interpret the contractual provisions regarding the allowability of the challenged costs because, in Defendants' view, interpretation of the M&O contract may require resort to evidence beyond what may be alleged in the complaint. (*See id.* at 3-4.) Moreover, Defendants assert that the questions posed to the CBCA should not limit the ability of the CBCA to conduct fact-finding because the court "should allow the CBCA to opine on the issue that Defendants and the government will eventually have to litigate anyway: whether the costs that were actually submitted are allowable under the contract and applicable regulations." (*Id.* at 5.) Third, Defendants contend that the Government's questions unnecessarily segregate the questions of whether the costs are unallowable under the M&O contract and whether they are unallowable under the regulations. (*See id.* at 5-6.) Fourth, Defendants argue that the court should pose to the CBCA a question regarding the reasonableness of Defendants' interpretation of the M&O contract and regulations with respect to the challenged costs. (*See id.* at 6-8.) Defendants assert that such a question would be allowed by § 7107(f) and that answering such a question would otherwise be within the CBCA's jurisdiction. (*See id.*)

Defendants also propose two questions for which the court should seek an advisory opinion from the CBCA:

1. Whether the challenged costs, i.e., the fully burdened labor costs of the corporate reachback employees, are allowable under the provisions of the M&O Contract and applicable regulations.

2. Whether it is objectively reasonable to interpret the M&O Contract and applicable regulations as allowing such costs.

(ECF No. 48 at 1, 3). Defendants explain that the language of the first proposed question identifies the costs challenged by the complaint and is thus narrowly tailored to the determination of whether the costs challenged by the complaint are unallowable. (*See id.* at 2.) The second proposed question, Defendants assert, would aid in the determination of the scienter element of the FCA claims regarding home office expenses. (*See id.*)

In response, the Government argues first that some limitations on the CBCA's consideration are necessary because the court's request for an advisory opinion arises in the context of deciding a Rule 12(b)(6) motion in which fact-finding is not permitted, because § 7107(f)(4) contemplates a timely response by the CBCA and does not envision the CBCA "taking over" an FCA action properly before the district court, and because § 7107(f) should not be read to allow the CBCA to decide matters that would otherwise be outside its jurisdiction. (*See* ECF No. 53 at 4-5.) Second, the Government contends that the narrowing language in Defendants' first proposed question (whether "fully burdened labor costs" are allowable) misidentifies the costs that are challenged in the complaint. (*See id.* at 5-6.) Third, the Government again argues that the court should not pose a question to the CBCA regarding whether Defendants' interpretation of the M&O contract and regulations with respect to home office expenses is reasonable. (*See id.* at 2-4.) Aside from again asserting that such a question is not permitted under § 7107(f), the Government also asserts that opining on such a question would be outside the CBCA's jurisdiction and that an opinion on the matter would be irrelevant

in determining scienter because of the Supreme Court's decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, ___ U.S. ___, 136 S. Ct. 1923 (2016). (*See id.*)

## II. LEGAL STANDARD

As the court explained in its December 6, 2016 order, it does not appear that a request for an advisory opinion pursuant to § 7107(f) has ever been made by a district court. (*See* ECF No. 42 at 38.) Indeed, the parties have not pointed the court to any authority, aside from the statute itself, providing any guidance as to the substance or form of a request for an advisory opinion, and the court's own research has unearthed none. Consequently, not only is there a paucity of authority regarding § 7107(f) in general, but there also appears to be no authority directly addressing the issues raised by the parties' briefs. The court, with the parties' help, is breaking new ground.

The court begins by looking to the language of § 7107(f)'s two relevant paragraphs. In the court's view, the statute imposes two relevant limitations on the court's authority to request an advisory opinion,[2] one limiting the circumstances when the court may request an advisory opinion and the other limiting the matters for which the court may request an advisory opinion.

The first limitation restricts the circumstances under which a court may request an advisory opinion. To understand the first limitation, it is important to recall that subsection (f) is the result of a 1994 amendment to § 10 the Contract Disputes Act ("CDA") that "'was added in response to cases, such as the one at bar, in which the adjudication process set out by the CDA,'" which generally calls for disputes involving government contracts to be resolved first by the contracting officer with appeal to the applicable board of contract appeals or the Court of Federal

---

[2] A third limitation, not at issue here, is that, once the court has decided to request an advisory opinion, it must direct that request to the particular board of contract appeals that would have jurisdiction to adjudicate an appeal from a claim arising under the contract being interpreted by the court. *See* 41 U.S.C. § 7107(f)(3).

Claims, "'has been superseded due to allegations of fraud,'" in which case the district court has exclusive jurisdiction over both the contract claims and the fraud claims. (ECF No. 42 at 34 (quoting *United States v. United Techs., Corp.*, No. 5:92-cv-375(EBB), 1996 WL 653620, at *3 (D. Conn. Oct. 11, 1996))); *see* 140 Cong. Rec. S6519 (June 7, 1994) (statement of Sen. Cochran). Thus, subsection (f) authorizes the court to request an advisory opinion from the relevant board of contract appeals, but it imposes a limitation on when the court may do so. It may do so "whenever an action involving . . . any issue that could be the proper subject of a final decision of a contracting officer appealable under this chapter" is pending in the district court. 41 U.S.C. § 7107(f)(1)-(2).

The second limitation restricts the matters for which the court may request an advisory opinion. The statute specifies that the court may request an advisory opinion only "on the matters of contract interpretation under consideration." 41 U.S.C. § 7107(f)(1). No other limitation on the scope of the request made by a district court is expressed by the statute.

The court draws two important conclusions from these two limitations in the statute's language. First, neither the limitations nor any other part of subsection (f) imposes any limitation on the authority of the boards of contract appeals to opine on the questions referred to them or on the methods employed by the boards of contract appeals in rendering an opinion. Both limitations the court has addressed are expressly directed at the district court specifically, limiting when the district court may request an advisory opinion and for what matters an advisory opinion may be requested. These limitations do not restrict the matters on which the boards of contract appeals may opine (except indirectly, by restricting the matters for which the court may seek an opinion), and they do not restrict how the boards of contract appeal may develop their opinions, for instance, by limiting the information the boards may consider.

Second, the limitation restricting when the court may request an advisory opinion does not set the same bounds as the limitation restricting the matters for which the court may seek an advisory opinion. The two limitations at issue, although close in proximity within the statute, express their respective boundaries using very different language. The first limitation defines the circumstances in which the court is authorized to make a request to be whenever an action before the court involves any *issue* on which a contracting officer could render a final decision that would be appealable to the boards of contract appeal. However, the second limitation defines the *matters*, not *issues*, for which the court may request an advisory opinion, and it does so not by reference to whether the contracting officer could adjudicate the matter or whether the boards of contract appeals could hear an appeal from such an adjudication but, instead, by reference to whether the matter is one of contract interpretation under consideration. These very different words and phrases, so close to each other in the statute, preclude viewing the boundary set by one limitation as the same boundary set by the other limitation. *See Scott v. United States*, 328 F.3d 132, 139 (4th Cir. 2003) ("Where possible, [a court] must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous."); *accord Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 491 (4th Cir. 2014); *see also* 2A Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 57:2 (7th ed. 2012) ("Courts assume that every word, phrase, and clause in a legislative enactment is intended and has some meaning . . . . Different words used in the same, or a similar, statute are assigned different meanings whenever possible."). Thus, the boundary set by the second limitation should not be defined by the expression defining the first limitation's boundary. In other words, in determining the matters for which it may request an advisory opinion, the court is *not* limited to seeking an opinion on only those issues that could be subject to a final decision of

a contracting officer and appealable to a board of contract appeals. Concluding otherwise would conflate the different boundaries set by the two statutory limitations.

Beyond these observations, the statute offers only one other clue as to the court's authority in requesting an advisory opinion. The statute specifies that, when the circumstances necessary for doing so are met, "the district court *may* request" an advisory opinion. 41 U.S.C. § 7107(f)(1) (emphasis added). The use of the word "may" in this context affords the court discretion in its decision whether to exercise its authority to request an advisory opinion once the circumstances providing for that authority have been met. *See In re Rowe*, 750 F.3d 392, 397 (4th Cir. 2014); 3 Singer & Singer, *supra*, § 57:3. It also suggests that, unless otherwise circumscribed, the court's manner of exercising this authority—for instance, in fashioning the language and other parameters of the request—are within the court's discretion as well.

### III. ANALYSIS

The court begins by determining the manner in which it will request that the CBCA provide an advisory opinion on the falsity matter (i.e., an advisory opinion on whether the challenged costs are allowable) and then turn to whether, and in what manner, the court will request that the CBCA provide an advisory opinion on the scienter matter (i.e., whether Defendants' interpretation of the M&O contract's and regulations' provisions regarding the challenged costs were reasonable).

### A. Falsity matter

With respect to the falsity matter the court identified as appropriate for referral to the CBCA—i.e., whether the home office expenses challenged in the complaint are unallowable— the parties argue along three fronts. First, the Government briefly argues that the court's referral on this matter is restricted in some way by § 7107(f)(2), which, the Government asserts, prevents

the court from requesting an advisory opinion from the CBCA on "matters fundamentally outside [the CBCA's] jurisdiction." (ECF No. 53 at 5.) It is not clear from the Government's briefing how exactly this putative restriction would affect the court's question regarding the falsity matter, but the court need not delve too deeply. As the court has already explained, ¶ (2) only imposes a limitation on when the court may request an advisory opinion; it does not impose any limitation on the matters for which a court may seek an advisory opinion. As for the Government's argument that the court's referral is restricted in some way by the scope of the CBCA's jurisdiction, the court perceives nothing in ¶ (2) or any other provision in § 7107(f) restricting the court's request for an advisory opinion (or, for that matter, restricting an advisory opinion provided by the boards of contract appeals) to a matter otherwise within the jurisdiction of the relevant board of contract appeals. It is not evident from its language that § 7107(f) prevents the relevant board of contract appeals from opining on a matter that otherwise would be outside its jurisdiction, and it is even less evident that the statute prevents the court from seeking such an opinion. Regardless, to the extent the Government seeks to argue that an advisory opinion could not be provided by the CBCA because the request involves matters beyond the CBCA's jurisdiction, the court believes such an argument is better addressed to the CBCA, which should have the opportunity to address its jurisdictional limitations in the first instance.[3]

Second, the parties argue over the extent to which the court's request regarding the falsity matter should attempt to define the home office expenses challenged by the complaint. Because this argument essentially involves the language or parameters of the request for an advisory opinion, the court concludes that it is a matter left to its discretion. The court notes that, to some

---

[3] In the court's view, nothing in § 7017(f) prevents a board of contract appeals from stating in its advisory opinion that it believes it does not have the jurisdiction to answer the question posed by the court.

extent, it has already defined the costs that are challenged by the complaint in its December 6, 2016 order. The court explained that:

> the Government need only allege, with sufficient factual detail, that SRNS submitted claims that were unallowable because they included [home office] expenses. The complaint does just that and even provides the information that Defendants assert it neglected. Which entity's expenses are alleged to have been claimed? FFS's. Which of FFS's expenses? Those for FFS loaned employees under the reachback program. Moreover, the complaint provides even more detail regarding the claimed expenses and their falsity. It alleges that the expenses were invoiced by FFS to SRNS under the auspices of the [cost transfer agreement] which governed FFS's reimbursement for loaned employee costs.

(ECF No. 42 at 54-55.)

To the extent Defendants argue that further definition is required, the court does not agree. In the court's view, the determination of which costs are challenged by the complaint is one that should be addressed by the CBCA's opinion for several reasons. For one thing, as the court has experienced, the very task of defining with precision which costs the complaint challenges itself involves understanding to some degree legal and factual issues peculiar to the administration of government contracts. Thus, at a minimum, permitting the CBCA some leeway in defining for itself the costs challenged by the complaint would provide the court precisely the type of guidance that § 7107(f) envisions. Also, by abstaining from further definition, the court allows the CBCA even greater flexibility to address the matter by, for instance, resorting to alternative opinions. The CBCA might assume for purposes of argument that the challenged costs are only those as defined by Defendants and then opine as to whether those costs are allowable, and, at the same time, it may also assume that the challenged costs are those as defined by the Government and then opine on whether those costs are allowable. An opinion in this nature would certainly elucidate matters of contract interpretation in a way that would guide this litigation to resolution. Moreover, allowing the CBCA to determine what costs the complaint

challenges allows it to opine on whether that determination can be made from the face of the complaint itself or whether resort to extrinsic evidence is necessary. Such a determination would provide ample reason for the court to revisit its prior conclusion that the complaint meets the Fed. R. Civ. P. 8 notice requirement. For all these reasons, the court will exercise its discretion to not further define the challenged costs beyond merely pointing to the description of those costs in the complaint.

Third, the parties argue over the extent to which the court should use the language of its request regarding the falsity matter to limit the CBCA's ability to assess information outside the four corners of the complaint. Defendants ask the court to fashion the request in such a way that the CBCA may "opine on the issue that Defendants and the government will eventually have to litigate anyway: whether the costs that were actually submitted are allowable under the contract and applicable regulations." (ECF No. 52 at 5.) The court declines to do so. As the Government correctly points out, the court's determination that referral of this matter to the CBCA was appropriate was made in the context of a Rule 12(b)(6) challenge to the sufficiency of the complaint, and the court reached that determination specifically because it concluded that it was appropriate, at the Rule 12(b)(6) stage, to assess whether the complaint sufficiently alleged an objective falsity, i.e., whether the costs challenged in the complaint would be unallowable. (*See* ECF No. 42 at 31-33.) The order did not contemplate referring the matter to the CBCA for an opinion on the factual issue of whether the challenged costs were actually charged. Because the factual determination that Defendants now advance was never contemplated by the court's previous order, the court, in its discretion, declines to seek an advisory opinion on the matter.

Although the court will not request that the CBCA determine whether Defendants in fact charged unallowable costs, the court will not restrict the information the CBCA may consider in

defining which costs the complaint challenges. The Government argues that the court should restrict the CBCA's consideration to only the four corners of the complaint because, if the CBCA considered information beyond the complaint, the court's subsequent consideration of the advisory opinion would amount to impermissible fact-finding at the motion to dismiss stage.[4] The court disagrees.

As an initial matter, even if the court agreed that the CBCA should be restricted from considering information that, if considered by the court, would be impermissible at that Rule 12(b)(6) stage, the court would not restrict the CBCA to only the four corners of the complaint. Rather, the CBCA would be permitted to consider at least those same documents the court considered in its December 6, 2016 order. (*See* ECF No. 42 at 9-17.) Aside from the information that may be considered at the Rule 12(b)(6) stage, the court does not agree that the CBCA should be restricted from considering any other information it deems pertinent to providing an advisory opinion on the questions posed by the court. The court reaches this conclusion because, in its view, the CBCA's consideration of information that would be beyond the scope of a Rule 12(b)(6) determination by the court in no way would oblige the court to make an impermissible Rule 12(b)(6) ruling. If the CBCA relies on information that could not be considered by the court

_____

[4] The Government also contends that § 7107(f)(4), which requires the board of contract appeals to which a request has been referred to provide an advisory opinion in a timely manner, requires the court to place some restrictions on the information the CBCA may consider in a referral made in a Rule 12(b)(6) context and to ensure that the referral does not amount to the CBCA "taking over" the FCA claim before the court. (*See* ECF No. 53 at 5.) The court disagrees. Nothing in the language of ¶ (4) imposes any limitations on the scope of the court's request for an advisory opinion. As explained above, the only such limitation is expressed in ¶ (1), which limits the court to requests for advisory opinions on matters of contract interpretation that it is considering. The ¶ (1) limitation is the one that lawmakers chose to impose on district courts, and it sufficiently prevents a board of contract appeals from "taking over" an FCA claim because it disallows the court from requesting an advisory opinion as to questions regarding fraudulent conduct. To whatever extent ¶ (4) imposes a limitation, it does so with respect to the boards of contract appeals and not the district court. If the Government believes that the CBCA's consideration of some or all information beyond the complaint will result in the CBCA's failure to comply with ¶ (4), the Government can make that argument to the CBCA.

in the Rule 12(b)(6) context, the advisory opinion would still likely prove useful even if the court could not fully adopt the CBCA's opinion. For instance, if the CBCA relied on such information, the court could still rely on the advisory opinion in making a Rule 12(b)(6) determination after discounting portions of the opinion that rely on the information. Alternatively, if such information formed part of the basis for the advisory opinion, the court could also convert a subsequent motion to dismiss into one for summary judgment and offer the parties a reasonable opportunity for discovery and presentation of relevant material. *See* Fed. R. Civ. P. 12(d). As another alternative already suggested above, the court, relying on the fact that the CBCA could not determine which costs were challenged by the complaint without resort to such information, could revisit its conclusion that the complaint met Rule 8's notice requirement, or the court could deny any subsequent motion to dismiss on the basis that Defendants have not succeeded in their argument that the complaint fails to allege objective falsity with regard to the home office expenses. Accordingly, the court, in its discretion, will not attempt through the question it poses to restrict the information that the CBCA may consider.

Having above considered the parties' arguments, the court will request an advisory opinion regarding the falsity matter by referring the question set forth in the attached letter to the CBCA.[5]

## B. Scienter matter

Regarding the scienter matter the court identified as appropriate for referral to the CBCA—i.e., whether Defendants' interpretation of the M&O contract and regulations with respect to home office expenses is reasonable—the Government asserts four reasons why the

---

[5] Defendants contend that the Government's two proposed questions unnecessarily segregate the questions of whether the costs are unallowable under the M&O contract and whether they are unallowable under the regulations. (ECF No. 52 at 5-6.) The court agrees, and the request fashioned by the court does not segregate these questions.

court should not request an advisory opinion on the matter from the CBCA. As set forth below, the court rejects all four of the Government's reasons.

First, the Government argues that § 7107(f)(2) prevents the court from requesting the CBCA to provide an advisory opinion on the matter because it is not one for which a contracting officer could render a final decision that would be appealable to a board of contract appeals. (ECF No. 47 at 3-4; ECF No. 53 at 6.) As explained above, however, ¶ (2) imposes no limitation on the matters for which a court may request an advisory opinion, so this argument must be rejected.

Second, the Government argues that a determination as to the reasonableness of Defendant's interpretation of the M&O contract and applicable regulations is beyond the scope of the CBCA's jurisdiction and that, therefore, § 7017(f) prevents the court from requesting an advisory opinion on the matter from the CBCA. (*See* ECF No. 53 at 2-3.) The court has already explained above that nothing in the language of subsection (f) appears to prevent a board of contract appeals from opining on a matter of contract interpretation that might otherwise be outside its jurisdiction or appears to prevent a district court from requesting such an opinion. To the extent the Government wishes to raise this type of jurisdictional argument, the court believes that it is best addressed to the CBCA in the first instance.

Third, the Government argues that requesting an advisory opinion as to the reasonableness of Defendants' interpretation would amount to impermissible fact-finding at the Rule 12(b)(6) stage. (ECF No. 47 at 4-5.) The court does not believe that an inquiry into the reasonableness of Defendants' interpretation would portend the CBCA's consideration of evidence beyond what would be necessary to reach an opinion as to the falsity matter described above. In this regard, the court emphasizes that it requests an advisory opinion only as to the

objective reasonableness of the interpretation Defendants now advance and does not request an advisory opinion as to whether Defendants held this interpretation prior to this litigation or whether it is or was subjectively reasonable for them to hold it under the circumstances. The question is merely whether and to what degree the M&O contract and applicable regulations are reasonably susceptible to the interpretation Defendants now hold. The court does not foresee an opinion on this second matter requiring consideration of information beyond that which the CBCA will need to consider in opining on the first matter, which is one of the primary reasons the court previously determined that the matter's referral to the CBCA would be appropriate.[6]

Fourth, the Government argues that, to the extent the court requests an advisory opinion as to the objective reasonableness of Defendants' current interpretation of the M&O contract and applicable regulations, such an opinion would be irrelevant. (*See* ECF No. 53 at 3-4.) In the Government's view, Defendants' current interpretation may be the product of *post hoc*, litigation-driven rationalization and may not have been held at the time Defendants submitted their allegedly false claims. (*See id.* at 4.) Further, the Government seems to argue that whether an interpretation advanced during litigation is an objectively reasonable interpretation is irrelevant because it fails to measure culpability based on the actor's knowledge at the time the challenged conduct occurred. For support, the Government cites to *Halo*, which dealt with a provision of the Patent Act that permits an award of up to treble damages in egregious cases of infringement. *See Halo*, 136 S. Ct. at 1928, 1932. Federal Circuit precedent required the patentee to prove that the infringement was objectively reckless in order to obtain the enhanced damages.

---

[6] The court notes in this regard that its December 6, 2016 order did not assume that the objective reasonableness of Defendants' interpretation would be a matter that could be decided at the Rule 12(b)(6) stage. The reason for the court's referral was that assessing the reasonableness of Defendants' interpretation seemed relatively undemanding when the court already had decided to seek an advisory opinion on whether the challenged costs were allowable and not that an advisory opinion on reasonableness would facilitate disposition at the Rule 12(b)(6) stage.

*See id.* at 1932. The Supreme Court rejected this requirement, stating that "it is not clear why an independent showing of objective recklessness . . . should be a prerequisite to enhanced damages" as "the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* The Supreme Court explained that the Federal Circuit test incorrectly "mak[es] dispositive the ability of the infringer to muster a reasonable . . . defense at the infringement trial[, which] . . . insulates the infringer from enhanced damages, even if he did not act on the basis of that defense or was even aware of it." *Id.* at 1933. The test was incorrect, the Supreme Court said because "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct" and noted that Supreme Court precedent does not "suggest[] that [courts] should look to facts that the defendant neither knew nor had reason to know at the time he acted." *Id.*

The court does not agree that the objective reasonableness of Defendants' current interpretation would be irrelevant to the scienter element of the FCA claims. As the court explained in its December 6, 2016 order, "a contractor is not liable under the FCA, if the claims at issue were submitted with nothing more regarding scienter than that the contractor believed the claims were valid under its interpretation of the underlying contract or regulation." (ECF No. 42 at 44-45.) This statement of the rule itself suggests that it applies when the interpretation at issue is one that the contractor held at the time the challenged conduct occurred. The order went on to explain that, in order to ensure that the interpretation advanced during litigation "was not the product of mere afterthought in an attempt to escape the scienter requirement" and indeed was the interpretation the contractor held at the time the challenged conduct occurred, many courts impose tests "involve[ing] a determination [of] whether the contractor's interpretation was

reasonable." (*Id.* at 45); *see United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999) ("[T]he reasonableness of [the contractor]'s interpretation of the applicable accounting standards may be relevant to whether it knowingly submitted a false claim . . . ."); *United States ex rel. Chilcott v. KBR, Inc.*, No. 09-cv-4018, 2013 WL 5781660, at *9 (C.D. Ill. Oct. 25, 2013) ("[C]ourts typically use the reasonableness of an FCA defendant's interpretation of the applicable law or contract term as part of their determination of whether the defendant acted with the requisite level of knowledge in submitting its claim to the government . . . ." (citing *United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008))). In other words, at the time the challenged conduct occurred, a contractor is more likely to have held in good faith an interpretation that is objectively reasonable and less likely to have done so when the interpretation is objectively unreasonable. *See Chilcott*, 2013 WL 5781660, at *6 ("Reasonableness is relevant to the question of whether a misinterpretation was knowing or deliberate . . . ."). However, the reasonableness of the interpretation alone is not dispositive of the scienter element. *See United States v. Kellogg Brown & Root Servs., Inc.*, No. 4:12-cv-4110-SLD-JAG, 2014 WL 1282275, at *7 (C.D. Ill. March 31, 2014) ("Reasonableness is relevant to, but cannot conclusively negate, knowledge of falsity for FCA purposes."); *Chilcott*, 2013 WL 5781660, at *6 ("Reasonableness is relevant to the question of whether a misinterpretation was knowing or deliberate, but it is not dispositive of that question . . . ."). Thus, the reasonableness of Defendants' *current* interpretation is relevant insofar as it indicates the degree of likelihood that Defendants (1) held the same interpretation during the time of the challenged conduct and (2) could have held that interpretation in good faith. To the extent the Government complains that an interpretation advanced during litigation might result from *post*

*hoc* rationalization, that concern is the precise reason that the objective reasonableness of such an interpretation is relevant.

Having determined that the objective reasonableness of Defendants' interpretation is relevant, the court does not believe that *Halo* compels a different conclusion. *Halo* is distinguishable at the very least because it involved considerations of objective recklessness under the Patent Act and not objective reasonableness under the FCA. More importantly, even if the court equated objective recklessness with objective unreasonableness, unlike the Federal Circuit's precedent in *Halo*, the courts assessing an FCA claim do not *require* the wronged party to prove objective unreasonableness as a prerequisite to recovery; rather, the courts assessing an FCA claim view objective reasonableness merely as non-dispositive evidence of the lack of the requisite scienter. Moreover, unlike the test rejected in *Halo*, the whole purpose of the objective reasonableness factor is in aid of determining whether the FCA defendant held the currently-asserted interpretation at the time the relevant conduct occurred. For these reasons, the court disagrees with the Government's argument that *Halo* compels the conclusion that the objective reasonableness of Defendants' current interpretation is irrelevant for purposes of scienter.

Having above considered the parties' arguments, the court will request an advisory opinion regarding the scienter matter by referring the question set forth in the attached letter to the CBCA.

## IV. CONCLUSION

For the foregoing reasons, the court **DIRECTS** the Clerk's Office to forward a copy of the letter attached to this order to the CBCA.

Proceedings in this matter are hereby **STAYED** until the CBCA provides an advisory opinion in response to the court's requests therefor set forth in the attached letter.

The parties are **ORDERED** to file a joint status report on October 11, 2017, and every four months thereafter, while the court's request for an advisory opinion remains pending in the CBCA.

The parties are further **ORDERED** within two weeks after the CBCA provides the advisory opinion to confer and notify the court whether a scheduling order should be entered.

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

April 11, 2017
Columbia, South Carolina